**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**DAWN MOSS O/B/O TCGK,**

**Plaintiff,**

**vs.** **CIVIL ACTION NO. 2:15-cv-13956**

**CAROLYN W. COLVIN**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

**Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act that she filed on behalf of her minor daughter. By Order entered January 5, 2016 (Document No. 10.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' Cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 15.)

The Plaintiff, Dawn Moss (hereinafter referred to as "Moss"), on behalf of her minor daughter TCGK (hereinafter referred to as "Claimant"), protectively filed her application for Title XVI benefits on May 16, 2012, alleging disability since June 8, 2006[1] due to learning and mental impairments, and asthma. (Tr. at 169.) Her claim was denied on August 29, 2012 (Tr. at 78-81.)

[1] Claimant would not be eligible for SSI benefits before the application date (May 16, 2012) pursuant to 20 C.F.R. § 416.202.

and again upon reconsideration on December 19, 2012. (Tr. at 87-93.) Thereafter, Claimant filed a written request for hearing on January 9, 2013 (Tr. at 94-96.) and an administrative hearing was held on April 28, 2014 before Administrative Law Judge ("ALJ") William R. Paxton. (Tr. at 31-50.) The ALJ heard the testimonies of Claimant (Tr. at 43-46.) and Claimant's mother. (Tr. at 35-43, 46-50.) On May 9, 2014, the ALJ entered a decision denying benefits. (Tr. at 11-30.)

Claimant sought review by the Appeals Council on June 6, 2014 (Tr. at 7-10, 315-317.); the ALJ's decision became the final decision of the Commissioner on August 21, 2015 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6.) On October 14, 2015, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A child is considered disabled for SSI purposes only if the child suffers from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" and which lasts for a period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner applies a three-step process in evaluating children's SSI claims. See 20 C.F.R. § 416.924(a). This process requires the Commissioner to consider, in order, whether the child 1) is engaged in substantial gainful employment; 2) has a severe impairment; and 3) has an impairment that meets or equals, either medically or functionally, the requirements of a listed impairment. Id. § 416.924(b)-(d). As with the process for adults, if the Commissioner finds that a

child is or is not disabled at any point in this process, the review does not proceed to the next step. Id. An ALJ may find a child to be disabled within the meaning of the Social Security Act only if he finds that the child has a severe impairment or combination of impairments that meets or equals an impairment listed in Appendix 1. See 20 C.F.R. §§ 416.924(c)-(d).

A child is disabled if the child is not engaged in substantial gainful activity and has a medically determinable physical or mental impairment or combination of impairments that result in "marked and severe functional limitations." 20 C.F.R. § 416.906. The impairment(s) must meet, medically equal, or functionally equal, a listing in the Listing of Impairments. See 20 C.F.R. §§ 416.924 and 416.926a. An impairment is functionally equal to a listed impairment when it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. See 20 C.F.R. § 416.926a. The Regulations define a "marked" limitation when an impairment "interferes seriously" with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). The definition of "extreme" is "interferes very seriously" with the ability to function. 20 C.F.R. § 416.926a(e)(3). The Commissioner is required to consider the totality of the evidence, that is, "no single piece of information taken in isolation", in determining whether a child has a marked or extreme limitation in a domain. See 20 C.F.R. § 416.926(e)(4). The Regulations set forth the following six domains of function which apply to all age groups: (1) Acquiring and using information, (2) Attending and completing tasks, (3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for yourself; and (6) Health and physical well-being. See 20 C.F.R. §§ 416.926a(b)(1), 416.926a(g)-(l).

In this particular case, the ALJ determined that Claimant was an "adolescent" on the date

of the application, May 16, 2012, and at all times relevant to this matter, was an "adolescent" per 20 C.F.R. § 416.926a(g)(2). (Tr. at 17, Finding No. 1.) Next, the ALJ found that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the application date. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: asthma; borderline intellectual functioning; learning disorder; and depressive disorder. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not functionally meet or equal the listings. (Id., Finding No. 4.) The ALJ then found that Claimant had a "marked limitation" in acquiring and using information but less than marked in the five remaining domain functions, thus she did not have an impairment or combination of impairments that functionally equaled the severity of the listings. (Tr. at 18, Finding No. 5.) On this basis, the ALJ found Claimant was not disabled. (Tr. at 26, Finding No. 6.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize

the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

She was born on June 8, 2000 and between the ages of twelve and eighteen during the relevant time period. (Tr. at 17.) Her mother filed for disability benefits on the basis that she had learning issues and struggled in school; she attended school in the Harrisburg City School District in Pennsylvania, Morrison Elementary in Ohio, and Ruffner Elementary School and Horace Mann Middle School in Kanawha County, West Virginia from 2007 through 2014, respectively. (Tr. at 168-175, 242-246, 249-277, 278-280, 314.) Moss alleged that her daughter's onset date for disability was June 8, 2006. (Tr. at 169.)

The Medical/Educational Record

The undersigned has considered the evidence as asserted by Claimant and the Commissioner, pertinent to this appeal:

Educational Records:

On April 3, 2007, at age 6 years and 9 months, Claimant was evaluated for Special Education services. (Tr. at 242-246.) She was described as a first grade student with needs in articulation and language. (Tr. at 245.) The evaluation did not document any issues relating to or interacting with others (Tr. at 242-246.)

Nearly five years later, on March 29, 2012, upon referral by the Students Assistance Team, school psychologist Charles Szasz, Ed.S., evaluated Claimant for underachievement. (Tr. at 356-361.) On the date of evaluation, Claimant was 11 years and 9 months, and in the fifth grade. (Tr.

at 356.) She was amiable and personable in her demeanor allowing for a good rapport to be readily established. (Tr. at 356.) As part of the evaluation, the Adaptive Behavior Assessment System (ABAS-II)-Teacher/Parent Forms were completed by Amanda Runion, Claimant's teacher, and by Moss. (Tr. at 358.) Ms. Runion and Moss rated Claimant in ten areas, including "social skills" (skills needed to interact socially and get along with other people, including having friends, sharing and recognizing emotions, assisting others, and using manners). (Tr. at 359.) Ms. Runion gave a rating of 11, and Moss gave a rating of 9. (Id.) The school psychologist noted that the adaptive behavior functioning completed by the teacher and parent presented "a contrasting picture" of Claimant. (Tr. at 360.) The teacher's rating revealed one area (functional academics) as falling within the mentally impaired range; the parent rating showed three areas (community use, functional academics, and home living) falling within the mentally impaired range. (Id.)

On an Individualized Educational Program ("IEP") form completed on May 11, 2012 (when Claimant was 11 years old and in the fifth grade), Claimant's educators indicated that her behavior did not impede her learning or that of others. (Tr. at 264.) In the "General Information" section, Claimant was described as "an extraordinarily likeable person". (Tr. at 268.) "She is personable, attractive and works well past expectations. She is friends to everyone and respected by all her peer (sic) and those who work with her." (Id.) Under the section for "Reading/LA," it was noted that Claimant "has a very good self-concept and is great with peer relationships." (Id.) In the "Mathematics" section, it states that Claimant is "very social which sometimes interfere with attention to task." (Id.) In the comment section, it was noted that Claimant is a "very respectful student" and "such a sweet girl". (Tr. at 277.) She was promoted to middle school. (Id.)

A Student Discipline Summary Form (when Claimant was 12 years old, and in the sixth

grade) documents "[n]o previous record of disciplinary actions". (Tr. at 199.)

A Student Discipline Summary Form, when Claimant attended Horace Mann Middle School, documents four disciplinary actions: a "Physical Fight Without Injury", a physical fight during intramurals (on May 16, 2013); Disruptive/disrespectful conduct, argumentative with teacher (on February 10, 2014); Harassment/bullying/intimidation, the initiation of a fight between two other students (on February 24, 2014); and Harassment/bullying/intimidation, Claimant hit a student in the face with a rope and then pushed her (on April 9, 2014). (Tr. at 314.) Each of the offenses resulted in three separate out of school suspensions, except for the Disruptive/disrespectful conduct which resulted in a one-day suspension. (Id.)

Asthma and Allergy Center:

The records indicate that Claimant was treated at the Asthma and Allergy Center from January 8, 2013 through March 21, 2014. (Tr. at 335-355, 362-363, 364-374, 375-377.) Claimant had routine office visits for treatment for asthma and shortness of breath, which were noted to be exacerbated by outdoor allergens (Tr. at 363.) and exertion during gym class. (Tr. at 339-340.) For her allergies and breathing issues, Claimant is prescribed several inhalers and medications: Flovent; Veramyst; Asmanex; Dulera; Advair; ProAir; Nasonex; Pataday drops; Claritin; Montelukast; and albuterol (for nebulizer). (Tr. at 247.) There is also documentation that at one time, Claimant presented to an emergency room due to an allergic reaction from a bee sting on her hand when she was around 3-4 years old, for that she was given an EpiPen. (Tr. at 344, 350, 352.)

Charleston Area Medical Center:

On January 19, 2012, Claimant also presented to the emergency room for asthma exacerbation and sore throat; a streptococcus screen was negative, and Claimant was discharged that day after being administered DuoNeb and albuterol. (Tr. at 318-324.)

State Agency Psychological Examiner:

On August 17, 2012, Kara Gettman-Hughes, M.A., performed a consultative examination of Claimant. (Tr. at 326.) Moss was noted to be applying for disability due to Claimant's learning problems, as she had difficulties recalling new information, had been retained in the first grade, and had an IEP. (Tr. at 327.) Moss had difficulty recalling the name of Claimant's treating physician. (Tr. at 328.) Moss reported that Claimant had a history of one year of mental health treatment when she resided in Pennsylvania, because Claimant had been touching her body parts inappropriately. (Id.) Otherwise, Moss denied mental health treatment other than evaluation by a school psychologist. (Id.)

On mental status evaluation, Claimant was cooperative; she had mild impairment in social functioning. (Tr. at 330.) According to Moss, Claimant frequently ran errands with her, speaks on the telephone a few times a week, enjoys listening to music, but does not engage in after school activities. (Tr. at 331.) Claimant has three close friends, periodically spends the night with family members, does her chores, and keeps her room clean. (Id.) Her recent memory was in the low average to mildly impaired range and her remote memory was fair to poor. (Tr. at 330.) Claimant's concentration was moderately impaired, persistence appeared mildly impaired and pace was slightly slow during evaluation. (Id.)

Ms. Gettman-Hughes diagnosed Claimant with learning disorder, not otherwise specified; depressive disorder, not otherwise specified; and borderline intellectual functioning (Tr. at 330.)

with a poor prognosis. (Tr. at 331.)

State Agency Psychological Consultant:

On August 24, 2012, psychological consultant, James W. Bartee, Ph.D. completed a child disability assessment at the initial level, and found that Claimant had marked limitation in acquiring and using information, and had less than marked limitation in attending and completing tasks, interacting and relating with others, moving about and manipulation of objects, caring for herself, and health and physical well-being. (Tr. at 51-58.) On August 27, 2012, State agency pediatric consultant, Uma Reddy, M.D., made the same findings (Tr. at 59-66.) Both Dr. Bartee and Dr. Reddy noted the consultative examiner's findings of mild limitation in social functioning, and moderate to mild deficiencies in concentration, persistence and pace. (Tr. at 55, 63.) On December 11, 2012 psychological consultant Jeff Harlow, Ph.D., and on December 14, 2012, pediatric consultant Thomas Lauderman, D.O., respectively, affirmed the aforementioned findings at the reconsideration level. (Tr. at 73.)

SSA Forms:

The record includes the Disability and Function Report as well as other standard SSA documents filed on Claimant's behalf by her mother. In a Disability Report-Child dated May 30, 2012, Moss stated that Claimant was "sweet and loving," but has some issues learning. (Tr. at 169.)

In a Function Report for Children Aged 12-18 dated June 1, 2012, in response to inquiries whether Claimant's impairments affect her social activities or behavior with other people, Moss indicated that Claimant (1) has friends her own age; (2) can make new friends; (3) generally gets along with her or other adults; (4) generally gets along all right with brothers and sisters; (5)

generally gets along with school teachers; and (6) plays team sports (for example, baseball, basketball, soccer). (Tr. at 189.) In the comments section, Moss wrote, "she has classmates" and "siblings always argue". (Id.) Moss also wrote, "My child is loving, heart of a pot of gold". (Tr. at 191.)

With regard to Claimant's ability to communicate, her mother indicated that she cannot deliver phone messages, repeat stories she has heard, tell jokes or riddles accurately, or explain why she did something; further, Moss indicated that her daughter "doesn't remember a lot especially a story. Put with pictures and live she can remember, she doesn't comprehend all that she learns, so its [*sic*] difficult for her to explain a lot." (Tr. at 187.)

In reference to any limitations in her daughter's progress in understanding and using what she has learned, Moss indicated that she cannot read and understand sentences in comics and cartoons, cannot read and understand stories in books, magazines, or newspapers, spell words of more than four letters, or understand, carry out, and remember simple instructions. (Tr. at 188.) Moss also indicated that Claimant is unable to cook a meal for herself, study and do her homework, or use public transportation by herself. (Tr. at 190.) Moss stated that "I have to make her study, criticism is hard on [her] she gets upset real quick." (Id.)

The Administrative Hearing

Claimant's Testimony:

At the administrative hearing on April 28, 2014, Claimant was nearly 14 years old and a seventh grader. (Tr. at 33, 35.) Claimant testified that she likes school because of her friends and that sometimes her teachers are nice. (Tr. at 44.) She stated math was easy and English was hard, but she did try really hard to complete her school work on time. (Id.) She testified that she "swing

on" a girl because she hit her first. (Id.) Claimant stated a teacher lied about her, and she admitted to talking back to the teacher but now she was "like best friends" with the teacher. (Tr. at 44-45.)

Claimant testified that she had difficulty with her breathing almost every day, and needed her inhaler during gym class. (Tr. at 45.) She stated half the day was good and half the day was bad with her breathing. (Id.) She stated the teachers were supposed to close the windows so she could work, but the teachers were not complying with her physician's note. (Tr. at 46.)

Moss's Testimony:

Moss testified that Claimant was born on June 8, 2000 and was in the seventh grade, although she was not doing well in school and had been retained in the first grade. (Tr. at 35.) Moss stated Claimant had special reading classes and received additional assistance in math, science, social studies, and reading. (Tr. at 36.) Claimant lived at home with Moss and her two sisters, who are 15 and 12 years of age. (Id.) Moss testified Claimant likes math but had a difficult time with reading comprehension. (Tr. at 39-40.) She stated that Claimant did her homework assignments if she liked them, but not if they were "boring" to her, and had to be monitored to make sure she completed them. (Tr. at 40.) Moss explained that tests must be read and explained to Claimant. (Tr. at 42.)

Moss testified that Claimant had experienced problems in school in the last two years, where the school wanted to transfer Claimant to another school, but was unable to do so because her present school was actually in her zone; "so now they started taking disciplinary actions, basically suspending her". (Tr. at 40-41.) Moss stated the reason for the disciplinary actions were that Claimant had smacked another girl in the face with a rope, had an altercation with another student, and had been argumentative with teachers. (Tr. at 41.) Moss indicated Claimant had

alleged another child was bullying her, but actually was not, and would get into fights if a friend did not like another child. (Id.) Moss testified that Claimant was sassy, argumentative, and had problems with her sisters, more so with the oldest sister. (Tr. at 46, 48.) Claimant also gets argumentative with her grandmother, and disrespected a member of her grandmother's church, requiring Moss to pick her up. (Tr. at 48.) Moss testified that Claimant has friends outside of school, and sees them about a couple of times after school. (Id.) There is a little girl who lives behind Moss's house who Claimant plays with, although Claimant does not stay outside long because of her eyes itching. (Id.) Moss also testified that for fun, Claimant watches television and plays, she has a laptop, and stays on her iPhone all day with Instagram, and likes Nicki Minaj, a rap artist, of whom she created a fan page. (Tr. at 49.)

Moss testified that Claimant was on several medications, including two inhalers and a nebulizer for allergies. (Tr. at 37.) She stated that Claimant required an inhaler prior to gym class and was not allowed to go outside for gym. (Tr. at 37-38.) Moss explained her daughter had breathing problems since she was three months old and presented at the Asthma and Allergy Center at least once or twice per month for evaluation and breathing treatments. (Tr. at 38.) She stated she had to pick up the child from school several times because of her breathing and need for treatment. (Id.) Moss stated the child had difficulty with running and required rest breaks when walking ten minutes to church. (Tr. at 42.)

Claimant's Challenges to the Commissioner's Decision

The sole issue on appeal is whether the ALJ erred in failing to find Claimant had an additional marked limitation in the domain of interacting and relating to others under 20 C.F.R. § 416.926a(i). (Document No. 12 at 6-10.) Claimant points out that this domain concerns how well

a child initiates and sustains emotional connections with others, develops and uses language, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. (Id. at 8.) Claimant argues that Social Security Ruling 09-5p further explains that adolescents (age 12 to 18) should be "[i]ncreasingly able to resolve conflicts between self and family members, peers, and others outside of family" and "[r]ecognize[] that there are different social rules for dealing with other children than with adults (for example, at home or in school) and with all kinds of people (for example, parents, siblings, friends, or classmates)." (Id.) Claimant contends that the ALJ relied "exclusively" on the Child Function Report completed by her mother and statements she made to the State agency psychological consultative examiner. (Id.) However, Claimant argues that the ALJ ignored other evidence that proved she had marked difficulties in interacting and relating to others, such as testimonial evidence provided by Claimant's mother, the Child Function Report, and the educational records indicating altercations and suspensions. (Id. at 9-10.) Claimant prays for remand so that the Commissioner can correct these errors. (Id. at 10.)

The Commissioner argues that the ALJ complied with statutory provisions when he found Claimant not disabled as of the date of her application. (Document No. 15 at 8-14.) The ALJ found Claimant had marked difficulty in only one domain and less than marked in the five other domains, therefore the decision finding her not disabled is appropriate. (Id. at 9-10.) The Commissioner also contends that Claimant had none of the functional impairments provided under 20 C.F.R. § 416.926a(m). (Id. at 10.) Further, the Commissioner points out that Moss's allegations in the Child Function Report did not support functional deficits as required under the Regulations, and the educational records did not support such deficits, as they only addressed issues with speech. (Id.

at 11-12.) The Commissioner disagrees with Claimant that records showing discipline actions in school indicate marked difficulties in interaction and relation to others. (Id. at 12.) Moreover, the Commissioner points out that State agency evaluators and consultants found Claimant only mildly impaired in social functioning, opinions entitled to consideration as well as other evidence. (Id. at 12-13.) Finally, the Commissioner argues that though Claimant likely experienced issues related to her subjective complaints, the ALJ found that they simply did not rise to the severity necessitating a finding that she was disabled based on the evidence; further, with respect to her subjective complaints, the ALJ considered Claimant's credibility, a determination entitled to deference. (Id. at 13-14.) In sum, the Commissioner asks the Court to find the Commissioner's decision is supported by substantial evidence. (Id. at 14.)

Analysis

The ALJ noted pursuant to the requirements under 20 C.F.R. § 416.924a(a) and SSR 09-2p, he "considered all of the relevant evidence in the case record.[2]" (Tr. at 18.) The ALJ noted that Claimant testified that she had difficulty in gym and has problems daily due to her allergies (Tr. at 19.) The ALJ further noted that Claimant cannot go outside for gym due to her allergies. (Id.) The decision also considers Claimant's statement that her school work is very hard, though she finds math easy, but English hard. (Id.) Further, the ALJ noted that Claimant claimed that the altercation at school was not her fault. (Id.) The ALJ reviewed Moss's testimony regarding Claimant's issues with her allergies and breathing and she hoped to get more help for them due to the number of

[2] "All relevant evidence" includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregiver(s); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e. at home, at school, and in the community). (Tr. at 18-19.)

medications Claimant takes each day. (Id.) The ALJ noted Moss's testimony that Claimant was suspended in middle school for an altercation with another child. (Tr. at 20.)

The ALJ found that the objective medical evidence did not support the extreme limitations alleged by Claimant and accordingly found the allegations not fully credible: with respect to her asthma, the ALJ noted that the medical records from Asthma and Allergy Center indicated that Claimant's asthma and allergic rhinitis were well controlled with medication, and that she needed to limit her exposure to allergens during the spring. (Id.)

With respect to Claimant's alleged mental impairments, the ALJ acknowledged that Claimant's IEP from Ohio concerned only speech services. (Id.) Moreover, it was noted that Dr. Szasz opined that Claimant would continue to have learning difficulties in school due to her low learning ability and would benefit from small group instruction whenever possible, cooperative learning situations, repeated instructions employing a concrete approach to learning, a peer helper, daily assignment monitoring involving home and school, and repetition of newly introduced concepts. (Id.) The ALJ noted the psychological evaluation provided by Ms. Gettman-Hughes, assessed Claimant with learning disorder NOS, depressive disorder NOS, and borderline intellectual functioning. (Id.) The ALJ gave "great weight" to the State agency consultants' findings that Claimant had marked limitation in acquiring and using information "as they are consistent with the medical evidence of record"; "school records support the claimant's allegations of difficulty acquiring and using information". (Tr. at 21.)

Regarding interacting and relating with others, the main subject in the appeal at bar, the ALJ initially set forth the pertinent Regulations and Rulings concerning impairment determination under this domain:

> This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community. Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community. (20 C.F.R. § 416.926a(i) and SSR 09-5p.) (Tr. at 23.)
>
> Social Security rules provide that an adolescent without an impairment should be able to initiate and develop friendships with children of the same age and to relate appropriately to other children and adults, both individually and in groups. The child should focus less attention on parents and more on relationships with peers, and develop an increasing desire for privacy. The child should be increasingly able to solve conflicts with peers, family members or adults outside of the family. The child should also recognize that there are different social rules for dealing with her friends and acquaintances than with adults (e.g., behaving causally with friends but more formally with people in authority). The child should be able to intelligibly express her feelings, ask for assistance, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers). (20 C.F.R. § 416.926a(i)(2)(v) and SSR 09-5p.) (Id.)

The ALJ also detailed the examples of such functional limitations listed under 20 C.F.R § 416.926a(i)(3) and SSR 09-5p: (i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people she knows, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (e.g. in using verbal and nonverbal skills to express herself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency. (Id.)

Ultimately, the ALJ found that Claimant "has less than marked limitation in interacting and relating with others" because Claimant: "was able to interact with others without real issues[3]"; "[s]he speaks on the telephone a few times a week"; "[s]he enjoys listening to music"; "[s]she has three close friends"; and "[s]he will periodically spend the night with family members"[4]. (Tr. at 24.) Claimant underscores these specific findings in support of her argument that the ALJ "exclusively" relied on this evidence, and failed to consider other evidence in the record, such as her mother's testimony, Moss's other statements provided in the Child Function Report, as well as the educational records showing Claimant's disciplinary actions. (Document No. 12 at 9-10.)

A review of the decision does not support Claimant's alleged ground for error, however. As noted *supra*, the ALJ discussed the testimonies provided by Moss and Claimant and noted the allegations for disciplinary actions resulting in suspensions from altercations with other students. The record shows that beginning in May 2013 through April 2014, from the ages of twelve through thirteen, Claimant had four disciplinary actions resulting in suspensions due to fighting or being disruptive in school. (Tr. at 314.) The ALJ noted other educational records, specifically Dr. Szasz's evaluation, that only focused on Claimant's learning difficulties, not social interactions. (Tr. at 20.) The ALJ further noted Ms. Gettman-Hughes rated Claimant's social functioning as mildly impaired. (Id.) The ALJ gave great weight to the State agency consultants who each found Claimant had less than marked limitations in interacting and relating with others. (Tr. at 21.) Interestingly, Claimant's application[5] for SSI benefits concerned her learning deficits or

---

[3] The ALJ cited Exhibit 5E, the Child Function Report, in support of this finding. (Id.)

[4] The ALJ cited Exhibit 3F, Ms. Gettman-Hughes consultative report, in support of these findings. (Id.)

[5] See, Disability Report – Child (Tr. at 168-175.) and Function Report – Child (Tr. at 184-192.) The more recent Disability Report – Appeals, dated January 11, 2013 also mentions that on or about December 1, 2012, Claimant was "[h]aving more mental problems" which were described as "[d]ifficulty focusing". (Tr. at 221.)

difficulties with her school work, and does not disclose any instances of functional deficits provided under 20 C.F.R § 416.926a(i)(3) and SSR 09-5p that supports a finding for marked impairment in the domain of interacting and relating to others.

It appears to the undersigned that Claimant's argument is that four school suspensions for fighting and disruption, a disagreement with a member of her grandmother's church, arguing with her sisters, and being sassy with her mother fulfills the criteria for the finding of marked limitation in interacting and relating to others. However, there is plenty of evidence that indicated Claimant has no such deficits in that domain, and it would be improper for the Court to re-weigh this evidence pursuant to Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). After a thorough review of the ALJ's decision and the record on which it is based, the undersigned finds that the conclusions reached by the ALJ in this case are "rational" and therefore based on substantial evidence. Oppenheim, 495 F.2d at 397.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's Motion for Judgment on the Pleadings (Document No. 12.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 15.), and **AFFIRM** the final decision of the Commissioner.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written

objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk of this court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: November 3, 2016.

Omar J. Aboulhosn
United States Magistrate Judge